IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Lakisha F.,[1] ) <br>                 Plaintiff, ) <br>   ) <br>    vs. ) <br>   ) <br> Commissioner of Social Security, ) <br>   ) <br>                 Defendant. ) <br>   ) | Civil Action No. 6:25-cv-3631-RMG-KFM <br><br> **REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and 28 U.S.C. § 636(b)(1)(B).[2]  The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g), 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits ("DIB") on May 18, 2020, alleging that she became unable to work on March 12, 2020 (Tr. 176–77). Applications for DIB and supplemental security income ("SSI") benefits filed on May 17, 2023 (alleging that she became unable to work on January 21, 2022) were consolidated

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.

[2] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

into this action by the Appeals Council on September 6, 2023 (Tr. 1801–02, 1901–18).  The original DIB application was denied initially (Tr. 56–69) and on reconsideration (Tr. 70–95) by the Social Security Administration.  On March 9, 2021, the plaintiff requested a hearing (Tr. 109).  On December 21, 2021, an administrative hearing was held via telephone at which the plaintiff, represented by counsel, and Heaven Hollender, an impartial vocational expert, appeared and testified before the administrative law judge ("ALJ") assigned to the case (Tr. 34–55).  On January 25, 2022, the ALJ considered the case *de novo* and found that the plaintiff was not under a disability as defined in the Social Security Act, as amended (Tr. 15–33).  The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on September 13, 2022 (Tr. 1–3).

On October 14, 2022, the plaintiff filed a complaint in the United States District Court for the District of South Carolina, and on May 17, 2023, the case was remanded to the Commissioner for further proceedings based on a voluntary motion to remand by the Commissioner (Tr. 1795–97).  *Fant v. Comm'r Soc. Sec. Admin*., C/A No. 6:22-cv-03560-RBH, at docs. 20; 21 (D.S.C. May 17, 2023).  On September 6, 2023, the Appeals Council issued an order remanding the matter to the ALJ to issue a new decision in accordance with the order and consolidating later-filed DIB and SSI applications into the current matter (Tr. 1800–02).

On March 26, 2024, a second administrative hearing was held via telephone at which the plaintiff, represented by counsel, and Robert Brabham, an impartial vocational expert, appeared and testified before the ALJ assigned to the case (Tr. 1746–66).  On May 22, 2024, the ALJ considered the case *de novo* and found that the plaintiff was not under a disability as defined in the Social Security Act, as amended (Tr. 1716–45).  The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals

Council denied the plaintiff's request for review on March 25, 2025 (Tr. 1688–92). The plaintiff then filed this action for judicial review (doc. 1).

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.

(2)    The claimant has not engaged in substantial gainful activity since March 12, 2020, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: degenerative disc disease of the thoracic and lumbar spine, degenerative joint disease of the left shoulder, degenerative joint disease of the knees, obesity, major depressive disorder, generalized anxiety disorder, social phobia, and post-traumatic stress disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

(5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she can occasionally push and pull, and she can occasionally stoop, kneel, crouch, and crawl. She can frequently reach, handle, and finger with her non-dominant left upper extremity. However, she can never climb and can have no exposure to workplace hazards, such as moving machinery and unprotected heights. She is limited to simple, routine tasks performed two hours at a time followed by regular breaks requiring only simple work-related decisions, occasional changes in the work setting or work methods, and no specific production rate work with assembly lines or hourly quotas. She can tolerate occasional interaction with the public but cannot perform tandem or team-dependent tasks.

(6)    The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 419.965).

(7)     The claimant was born on December 10, 1981, and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

(8)     The claimant has at least a high school education (20 C.F.R. §§ 404.1564 and 416.964).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from March 12, 2020, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(A), (H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505(a), 416.905(a).

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of

five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets or medically equals an impairment contained in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1, (4) can perform her past relevant work, and (5) can perform other work. *Id.* §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A claimant must make a *prima facie* case of disability by showing she is unable to return to her past relevant work because of her impairments. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). Once an individual has established a *prima facie* case of disability, the burden shifts to the Commissioner to establish that the plaintiff can perform alternative work and that such work exists in the national economy. *Id.* (citing 42 U.S.C. § 423(d)(2)(A)). The Commissioner may carry this burden by obtaining testimony from a vocational expert. *Id.* at 191–92.

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. Consequently, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**ANALYSIS**

The plaintiff, who was 38 years old on the alleged disability onset date, seeks disability based upon physical and mental impairments that limit her ability to work. The plaintiff has past relevant work experience as a nurse assistant and call out operator (Tr. 1734). The plaintiff argues that the ALJ erred by (1) failing to explain the mental residual functional capacity ("RFC") assessment (doc. 11 at 19–25) and (2) by failing to properly assess opinion evidence (*id*. at 12–19, 25–28). The Commissioner, on the other hand, asserts that the ALJ's decision is supported by substantial evidence and should be affirmed (doc. 12 at 6–26).

***Residual Functional Capacity***

The regulations provide that a claimant's RFC is the most that she can still do despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). It is the ALJ's responsibility to make the RFC assessment, *id.* §§ 404.1546(c), 416.946(c), and the ALJ does so by considering all of the relevant medical and other evidence in the record, *id.* §§ 404.1545(a)(3), 416.945(a)(3).

Social Security Ruling ("SSR") 96-8p provides in pertinent part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. Only after that may [the] RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184, at *1. The ruling further provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case

6

> record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted). Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

In evaluating the plaintiff's case, the ALJ set forth the following RFC assessment:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she can occasionally push and pull, and she can occasionally stoop, kneel, crouch, and crawl. She can frequently reach, handle, and finger with her non-dominant left upper extremity. However, she can never climb and can have no exposure to workplace hazards, such as moving machinery and unprotected heights. She is limited to simple, routine tasks performed two hours at a time followed by regular breaks requiring only simple work-related decisions, occasional changes in the work setting or work methods, and no specific production rate work with assembly lines or hourly quotas. She can tolerate occasional interaction with the public but cannot perform tandem or team-dependent tasks.

(Tr. 1722). The RFC assessment was followed by a discussion of the record evidence (Tr. 1722–33).

As noted above, the plaintiff argues that the mental RFC assessment is flawed because the ALJ did not explain how it accounted for the plaintiff's mental limitations – specifically, her concentration, persistence, and pace difficulties (doc. 11 at 19–25). The undersigned agrees. At step two of the sequential evaluation process, the ALJ found that the plaintiff had a "mild" limitation in the functional area of understanding, remembering, or applying information and "moderate" limitations in the remaining functional areas:

7

interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 1721). In determining the plaintiff's RFC assessment, the ALJ limited the plaintiff to a range of sedentary work with nonexertional limitations, as quoted above (Tr. 1722).

In *Mascio v. Colvin*, relied on by the plaintiff, the claimant objected to the ALJ's failure to conduct a function-by-function analysis of the claimant, as well as the use of a legally insufficient hypothetical to the vocational expert. 780 F.3d 632, 635–38 (4th Cir. 2014). The United States Court of Appeals for the Fourth Circuit found that "the ability to perform simple tasks differs from the ability to stay on task" and that "only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* at 638. The court found it reversible error that the ALJ did not explain his consideration of the plaintiff's limitations in concentration, persistence, or pace in the RFC assessment or present the limitation to the vocational expert in a hypothetical, stating as follows:

> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

*Id.* (internal citation omitted).

The Fourth Circuit clarified its holding in *Mascio*, affirming in a published decision that *Mascio*

> did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC. On the contrary, [the court] explained that an "ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation" in the claimant's RFC.

*Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) (citing and partially quoting *Mascio*,

780 F.3d at 638).  The court went on to note:

> In sum, and unlike in *Mascio*, the ALJ in this case addressed [the claimant's] lifelong, borderline intellectual disability, including her moderate limitations in concentration, persistence, or pace.  The ALJ explained why the psychological evidence and [the claimant's] statements support a mental limitation to simple, routine, and repetitive tasks.  And the ALJ included the mental limitation in the hypothetical question posed to the vocational expert.  Moreover, while [the claimant's] severe impairments include her borderline intellectual functioning, she had been gainfully employed for decades despite her mental limitations.  [Thus,] the ALJ's findings and the mental limitation included in the RFC are sufficiently explained and supported by substantial evidence in the record.

*Id.* at 122 (footnote omitted) (alterations added).

As quoted above, circuit precedent does not require a limitation in the RFC

assessment just because there is a moderate limitation in one of the functional areas; thus,

important to the analysis is whether an ALJ explains the mental RFC findings.  Here, as

argued by the plaintiff, the undersigned finds that the ALJ did not provide an explanation

for the mental RFC assessment.  Indeed, other than providing a summary of the plaintiff's

mental health treatment during the relevant period, the ALJ did not explain how she

determined that the difficulties caused by the plaintiff's mental impairments translated to the

mental RFC limitations assessed.  It also appears that the ALJ's analysis of the plaintiff's

mental health treatment – focusing on temporary periods of symptom improvement and a

lack of objective findings – runs afoul of the Fourth Circuit's decision in *Shelly C.*, in which

the court found that depression should be treated as a unique disease that does not

produce objective evidence; thus, subjective statements should be treated as substantiating

the individual's impairment.  *Shelly C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 361

(4th Cir. 2023) (citing *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 96–98 (4th Cir.

2020)).  Here, the ALJ acknowledged the plaintiff's subjective reports of anxiety, decreased

concentration, and restlessness to providers, but then discounted them based on benign

examination findings and brief periods of improved symptoms (*see* 1727–29). *Shelly C.* found such an analysis improper, and, therefore, this matter should be remanded.

Additionally, as argued by the plaintiff, the ALJ did not explain consideration of conflicting evidence regarding the plaintiff's ability to concentrate (doc. 11 at 22–24). For example, in finding that the plaintiff could concentrate in two-hour intervals, the ALJ did not address hearing testimony from the plaintiff that she could not pay attention for two hours (including to watch a movie) and notes on her function reports that she could only pay attention for up to thirty minutes (*see* Tr. 45, 221, 240, 1722, 1729). Of note, the hearing testimony and function reports include some contradictory information regarding the plaintiff's ability to concentrate, including that the plaintiff spends her days watching television and can pay her bills, count change, and use a savings account and checkbook (Tr. 220, 219, 238). However, the ALJ – not this court – must explain her consideration of such evidence. Additionally, the ALJ appears to have cherry-picked portions of the plaintiff's treatment records in summarizing the plaintiff's mental health treatment and concluding that the RFC assessment was appropriate. For example, the ALJ indicated that the plaintiff reported to George Jones, Psy. PhD., improvement on medication in October 2021; however, the ALJ did not address abnormal examination findings during that same treatment visit indicating that the plaintiff had withdrawn behavior, obsessive thought processes, a depressed mood, and a flat affect (Tr. 1570–72). Other records from the same practice during 2021 indicate that the plaintiff continued experiencing mood swings, had fair attention and concentration, was withdrawn, lacked motivation, had obsessive thoughts, and exhibited compulsive behavior (Tr. 1559–60, 1562–64, 1565–67, 1575–76, 1580, 4409–11). Records from Chandra Rashmi, M.D., from May to October 2020 note complaints of depressed mood and decreased concentration with only an anxious mood noted on examination (Tr. 658, 662, 665, 669, 672, 675, 679, 682). Records from the practice of Ernest Martin, M.D., from June 2022 through January 2024 note some

10

improvement in the plaintiff's symptoms and functioning, but she only had one treatment visit where her examination findings were normal – meaning that most of those records reflected a depressed or okay mood, and her attention and concentration were not normal (Tr. 4373–84, 4387–4404).  These records appear contradictory to the ALJ's determination that the plaintiff's functioning improved and she had limited objective mental health findings. Nevertheless, perhaps, as contemplated in *Mascio* and reaffirmed in *Shinaberry*, the plaintiff's mental RFC assessment did not require additional mental limitations.  However, it is beyond the purview of substantial evidence review for the court to provide such an explanation for the ALJ.  "A necessary predicate to engaging in substantial evidence review is a record" that adequately explains the ALJ's findings and reasoning.  *Dowell v. Colvin*, C/A No. 1:12-cv-1006, 2015 WL 1524767, at *4 (M.D.N.C. Apr. 2, 2015) (requiring that the ALJ "build a logical bridge between the evidence and his conclusions") (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).  Thus, although the ALJ retains the authority to assess the plaintiff's RFC, the ALJ's decision is legally insufficient because it did not adequately explain the mental RFC findings.

### *Remaining Allegation of Error*

In light of the court's recommendation that this matter be remanded for further consideration as discussed above, the court need not specifically address the plaintiff's remaining allegation of error as the ALJ will be able to reconsider and re-evaluate the evidence as part of the reconsideration of this claim.  *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763–64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect as it is vacated and the new hearing is conducted *de novo*); *see Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).  As such, should the district judge adopt this recommendation, the ALJ is to also take into consideration the plaintiff's remaining allegation of error on remand.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.[3]

**IT IS SO RECOMMENDED**.

s/Kevin F. McDonald
United States Magistrate Judge

May 6, 2026
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page.*

---

[3] In the reply brief, the plaintiff for the first time requests that this matter be remanded with an award of benefits (doc. 13 at 12). However, the undersigned finds that the plaintiff's entitlement to benefits is not wholly established, and thus this matter should be remanded for further consideration and assessment of the above-discussed evidence by the ALJ in the first instance. *See Crider v. Harris*, 624 F.2d 15, 17 (4th Cir. 1980) (finding remand for an award of benefits was warranted where the individual's entitlement to benefits was "wholly established" on the state of the record).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).